UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:16-CV-683-BR

| | |
|---|---|
| VOTER INTERGRITY PROJECT NC, INC., | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| WAKE COUNTY BOARD OF ELECTIONS, | ) |
| Defendant, | ) |
| and | ) |
| JENNIFER MORRIS, EDWARD JONES, and SIOBHAN MILLEN, | ) |
| Defendant-Intervenors. | ) |

This matter is before the court on the motions to dismiss of defendant Wake County Board of Elections ("WCBOE") and defendant-intervenors Jennifer Morris, Edward Jones, and Siobhan Millen. (DE ## 14, 27.) Plaintiff Voter Integrity Project NC, Inc. ("VIP-NC") has filed responses in opposition to the motions. (DE ## 19, 30.) Defendant-intervenors filed a reply. (DE # 33.) This matter is therefore ripe for disposition.

**I. BACKGROUND**

VIP-NC is an organization which "has dedicated significant time and resources to ensure that voter rolls in the state of North Carolina, and in Wake County, are free from ineligible registrants, non-citizens, individuals who are no longer residents and individuals who are registered in more than one location." (Compl., DE # 1, ¶ 3.) On 18 July 2016, it filed this action alleging that WCBOE has violated Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507, and seeks declaratory and injunctive relief and attorney's

fees.

On 10 August 2016, WCBOE filed its answer, (DE # 13), and motion to dismiss the complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). On 3 October 2016, defendant-intervenors, three individuals who are actively engaged in voter registration and related work, filed a motion to intervene. (DE # 22.) On 1 December 2016, the court allowed that motion. (DE # 26.) The following day, defendant-intervenors filed their motion to dismiss pursuant to Rule 12(b)(6).

## II. DISCUSSION

Both motions to dismiss are filed pursuant to Rule 12(b)(6).[1]

> In a Rule 12(b)(6) context, the reviewing court must determine whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." This directive ordinarily limits a court's review to the "well-pled facts in the complaint[, which it must view] in the light most favorable to the plaintiff." While no absolute bar exists, a motion to dismiss under Rule 12(b)(6) does not typically resolve the applicability of defenses to a well-pled claim.

Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015) (citations omitted) (alteration in original). With this standard in mind, the court will consider VIP-NC's NVRA claims.

> The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." Congress enacted the NVRA in order to "increase the number of eligible citizens who register to vote" in federal elections, "enhance[ ] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter

---

[1] Because WCBOE filed its answer with its motion to dismiss, its motion technically is one for judgment on the pleadings under Rule 12(c). See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002). "However, the distinction is one without a difference," as the court applies the same standard as Rule 12(b)(6) motions. Id. at 406.

2

registration rolls are maintained."

Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331, 334 (4th Cir. 2012) (citing 42 U.S.C. § 1973gg (now codified at 52 U.S.C. § 20501)) (alteration in original). Section 8 of the Act, which is at issue here, imposes various duties and obligations regarding voter registration. The NVRA provides a private right of action to "[a] person who is aggrieved by a violation of [the NVRA]." 52 U.S.C. § 20510(b)(1). The aggrieved party must first provide "written notice of the violation to the chief election official of the State involved," id., unless "the violation occurred within 30 days before the date of an election for Federal office," id. § 20510(b)(3). "If the violation is not corrected within 90 days after receipt of a notice . . ., or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office," the aggrieved person may file a suit. Id. § 20510(b)(2).

VIP-NC alleges WCBOE violated Section 8 of the NVRA. In Count I, VIP-NC asserts that WCBOE has failed to make a reasonable effort to conduct voter list maintenance under § 20507(a)(4).[2] In Count II, it asserts that WCBOE has failed to respond to VIP-NC's written requests for data and failed to provide records in accordance with § 20507(i).

WCBOE initially argues that because the mandates of the NVRA are directed to states, it, as a local government unit, is not a proper party. WCBOE is correct that the particular subsections at issue are phrased in terms of state obligations. "[E]ach State" is required, "[i]n the administration of voter registration for elections for Federal office, . . . [to] conduct a general

---

[2] VIP-NC also claims WCBOE violated a provision of the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083(a)(2)(A), which requires the appropriate state or local election official to perform regular voter list maintenance. (Compl., DE # 1, ¶ 30.) It recognizes that the HAVA does not provide a private right of action but contends that the provision is relevant to determining "whether the Defendant has a 'reasonable' program for voter list maintenance." (Resp. Opp'n WCBOE Mot. Dismiss, DE # 19, at 6 n.3.)

program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—(A) the death of the registrant; or (B) a change in the residence of the registrant . . . ."). 52 U.S.C. § 20507(a)(4). "Each State" must also "maintain for at least 2 years and shall make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." Id. § 20507(i)(1). However, the NVRA also contemplates local government involvement in carrying out the State's obligations. See 52 U.S.C. § 20501(a)(2) (finding "it is the duty of the Federal, State, and local governments to promote the exercise of that right" to vote), (b)(2) (recognizing one of the purposes of the NVRA is "to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of eligible citizens as voters in elections for Federal office").

In North Carolina, the State Board of Elections ("SBOE") is charged with adopting a program to comply with the NVRA's list maintenance requirement. See N.C. Gen. Stat. § 163-82.14(a). However, North Carolina law also designates local county boards of elections as the entities directly responsible for performing list maintenance in accordance with that program. See id. § 163-82.14(a) ("Each county board of elections shall conduct systematic efforts to remove names from its list of registered voters in accordance with this section and with the program adopted by the State Board."). Pertinent here, each county board of elections is required to remove from its voter registration records any person who is listed as deceased on a monthly report from SBOE, id. § 163-82.14(b); to "conduct a systematic program to remove from its list of registered voters those who have moved out of the county, and to update the

4

registration records of persons who have moved within the county, id. § 163-82.14(d); and to remove a person from its list who has moved after following statutorily mandated procedures, id. Based on WCBOE's explicit list maintenance obligations, the court concludes that WCBOE is a proper party. See Bellitto v. Snipes, No. 16-cv-61474-BLOOM/Valle, 2016 WL 6248602, at *3-5 (S.D. Fla. Oct. 26, 2016) (denying motion to dismiss NVRA Section 8 claims against the defendant local election official where the plaintiffs had not sued the Secretary of State or the State of Florida and recognizing that because the local election official has obligations under the NVRA based on state law, the plaintiffs may bring an action against her for her alleged failure to meet those obligations); Am. Civil Rights Union v. Martinez-Rivera, 166 F. Supp. 3d 779, 791-93 (W.D. Tex. 2015) (rejecting the defendant county tax assessor-collector's argument for dismissal of NVRA Section 8 claim because the plaintiff had not sued the Texas Secretary of State).

The decision of Harkless v. Brunner, 545 F.3d 445 (6th Cir. 2008), on which WCBOE relies, does not support a different result. There, the plaintiffs sued Ohio's Secretary of State and the Director of Ohio's Department of Job and Family Services ("DJFS") for failure to comply with Section 7 of the NVRA.[3] The Eighth Circuit considered "whether states should be held responsible for implementing the requirements of Section 7 of the NVRA." Harkless, 545 F.3d at 449. The Secretary of State argued she should not be held responsible for any NVRA violations. Specifically, she claimed her only duty was to coordinate the state's responsibilities under the Act, "[a]nd, because Ohio chose to implement its requirements through the county

---

[3] In the context of Harkless, Section 7 requires that "any time a person enters a DJFS office to receive food stamps, Medicaid assistance, welfare, or disability benefits assistance, that person should receive a voter registration form for federal elections and assistance in filling out the form." 545 F.3d at 450.

5

departments and to make local officials responsible, those local officials, not the Secretary, are the proper parties to this lawsuit." Id. at 451. The court concluded that the state could not abdicate its responsibility under the NVRA through delegation to local officials and that the Secretary specifically was responsible for implementation and enforcement of Section 7. Id. at 452-53. Accordingly, the court held the Secretary, as the designated chief election official, was *a* proper party. Id. at 455.

The Harkless court went on to consider whether the Director of DJFS, a state agency, could also be liable under the NVRA. A portion of its analysis bears repeating:

> Because Ohio law authorizes the statewide DJFS (and thus the Director) to ensure compliance with Section 7 of the NVRA, the Director relies on the following curious proposition: because local authorities have the independent responsibility to comply with the NVRA, the Director should not be held accountable. True, the Ohio General Assembly has tasked the county offices with implementing the NVRA; but, as previously explained, the General Assembly also tasked the Director with the power to enforce any county transgressions of federal law. *This is not an either-or proposition.* The fact that some states, like Ohio, delegate the administration of public assistance programs to counties or municipalities should not mean that those states are free of all statutory obligations.

Id. at 457 (citations omitted) (emphasis added). The court held that the Director was also *a* proper party based on her responsibilities for meeting the requirements of the NVRA distinct from the Secretary of State's responsibilities. See id. at 456-57, 458. Contrary to WCBOE's suggestion, the court did not hold that the state (or a state official) is *the* (only) proper party in a NVRA action.

WCBOE next appears to argue that VIP-NC's letter to WCBOE dated 2 June 2016 did not comply with the notice provision of § 20510(b) before filing suit. By that letter, VIP-NC notified WCBOE that WCBOE was apparently in violation of Section 8 of the NVRA by failing

6

to conduct a reasonable effort to remove ineligible voters from its rolls and identified the basis for this belief: the "county has significantly more voters on the registration rolls than it has eligible living citizen voters." (Compl., Ex. A.) VIP-NC also requested that WCBOE make available for public inspection records under § 20507(i). The letter states, among other things, that it serves as the statutory notice required by § 20510(b) and that if the county did not fully comply with Section 8, VIP-NC may file suit under the NVRA within 20 days after receipt. (Id.) The Executive Director of SBOE was copied on the letter.[4]

In National Council of La Raza v. Cegavske, 800 F.3d 1032, 1035 (9th Cir. 2015), the court summarized the notice requirements of § 20510(b) as follows.

> Whether the aggrieved person is required to give notice and how long the person must wait to file suit after giving notice depends on the timing of the next federal election. When the violation upon which a suit is based occurs a substantial time before the next federal election, the aggrieved person must notify the state of the alleged violation and must then wait 90 days before filing suit. [52 U.S.C.] § 20510(b)(1)-(2). However, "if the violation occurred within 120 days" of a federal election, the aggrieved person must wait only 20 days after notifying the state before bringing suit. *Id.* § 20510(b)(2). "If the violation occurred within 30 days" of a federal election, the aggrieved person does not need to give any notice before bringing suit. *Id.* § 20510(b)(3).

Furthermore,

> A plaintiff can satisfy the NVRA's notice provision by plausibly alleging that a ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election. Neither the notice nor the complaint needs to specify that the violation has been actually observed, and that there is thus a "discrete violation," during the 120–day or 30–day period. It is enough that the notice letter and the complaint plausibly allege the existence of an ongoing violation within the appropriate time period, whether or not it was "discrete" during the period.

---

[4] When notice of the violation is required, the NVRA obligates the aggrieved party to provide the notice to the state chief election official. See 52 U.S.C. § 20510(b)(1), (3). In North Carolina, the Executive Director of SBOE is designated as the chief election official for purposes of the NVRA. N.C. Gen. Stat. § 163-82.2. Therefore, having provided the Executive Director with a copy of the 2 June 2016 letter, VIP-NC satisfied its obligation to provide written notice of the violation to the chief election official.

7

Id. at 1044 (citations omitted).

Here, WCBOE emphasizes that "plaintiff's lawsuit was initiated forty-six (46) days after the date of the letter" and "the letter was dated five (5) days before the June 7, 2016 North Carolina Congressional Primary." (Mem., DE # 15, at 9 (footnote omitted).) WCBOE then argues that "the 'violation' plaintiff alleges, even if . . . taken as true, occurred in 2014." (Id. at 10.) While not explicitly saying so, WCBOE's contention appears to be that because the alleged violation occurred more than 120 days before a federal election, VIP-NC was required to wait 90 days after WCBOE's receipt of the notice letter to file suit. VIP-NC has, however, alleged an ongoing violation of Section 8 in that WCBOE is continuing to violate the NVRA's list maintenance requirements. (See Compl., DE # 1, ¶¶ 14, 15.) Because VIP-NC alleges an ongoing violation at the time of the notice letter, its filing of suit 46 days after the 2 June 2016 letter complied with the notice requirement of § 20510(b)(2). See Cegavske, 800 F.3d at 1044.

Finally, both WCBOE and defendant-intervenors contend that VIP-NC's allegations are insufficient to show a violation of the obligation to conduct a program that makes a reasonable effort at voter list maintenance.[5] In support of this claim, VIP-NC alleges that "voter rolls maintained by [WCBOE] contain or have contained more registrants than eligible voting-age citizens." (Id. ¶ 9.) Further, it cites to 2014 data from the U.S. Election Assistance Commission and the U.S. Census Bureau. (Id. ¶¶ 10, 11.) Using that data, it alleges "the

---

[5] Defendant-intervenors move only to dismiss Count I. Although WCBOE generally contends that VIP-NC's factual allegations fail to support a cause of action under the NVRA, (Mem., DE # 15, at 3), WCBOE make no specific arguments to support dismissal of Count II other than continuing its argument that VIP-NC has sued the wrong party, (id. at 8-9). For the reasons set forth above, the court disagrees and concludes WCBOE, to the extent it maintains records concerning implementation of its list maintenance activities (which incidentally it does not deny that it does), is required to make such records available for public inspection.

8

registration rate in Wake County has been 104.75 percent during the conduct of a federal election." (Id. ¶ 12.) It also cites to more recent data, as of 2 July 2016, from SBOE, (id. ¶ 13), and based on that data along with the 2014 census bureau data, alleges "the registration rate in Wake County remains in excess of 104 percent of eligible citizens residing in Wake County," (id. ¶ 14). Also, as an example of WCBOE's "failure to reasonably maintain the voter rolls," VIP-NC alleges WCBOE "undertakes absolutely no effort whatsoever to use data available from the Wake County Clerk of Superior Court obtained from jury excusal communication" to identify "residents who self-identify as non-citizens or non-residents" or to identify "potentially obsolete mailing addresses of registrants." (Id. ¶ 19.)

WCBOE characterizes VIP-NC's reliance on 2014 census bureau data of eligible voters (which is based on an average from 2010 to 2014) as a "threadbare basis" to support its allegation that the number of registered voters in Wake County remains in excess of 104 percent of eligible voters. (Mem., DE # 15, at 10.) Somewhat relatedly, defendant-intervenors argue VIP-NC's conclusion based on the cited data is "oversimplified" because it disregards the NVRA's requirement that, absent his/her written request, a registered voter cannot be removed from the official list of eligible voters on the ground of a changed residence without written notice and only after two federal general elections after the notice. (Mem., DE # 28, at 8.) See also 52 U.S.C. § 20507(d)(1). "Thus, [according to defendant-intervenors,] it is entirely plausible that the number of registrants would *exceed* the eligible voting age population in a jurisdiction with high voter participation and a relatively transient population." (Mem., DE # 28, at 9 (emphasis in original).)

The court notes that there is nothing inherently wrong with VIP-NC's reliance on census

9

data to support its claim.  See Martinez-Rivera, 166 F. Supp. 3d at 791 (recognizing "that United States census data is reliable"); id. at 805 (report and recommendation) (taking into consideration registration rate based on census data to determine whether the plaintiff stated a claim for failure to make a reasonable effort to conduct voter list maintenance under Section 8 of the NVRA).  While reliance on older data might arguably weaken an inference of wrongdoing, VIP-NC used the most recent census data available at the time of the filing of its complaint.  See https://www.census.gov/rdo/data/voting_age_population_by_citizenship_and_race_ cvap.html (last visited 2/16/17) (2011-2015 data published 2/1/17).  And, while defendant-intervenors have advanced a potentially reasonable explanation for the high registration rate, that being the two-election cycle waiting period to remove a registrant from the official voter list, the validity of that explanation is not appropriate for determination at this early stage of the litigation, where the court views the factual allegations and inferences drawn therefrom in favor of VIP-NC.

Both WCBOE and defendant-intervenors take issue with VIP-NC's supporting its claim with the allegation that WCBOE has failed to use data from jury excusal communication.  The parties all appear to agree that the NVRA does not mandate that election officials use a particular tool to conduct a voter list maintenance program, rather the Act provides election officials with discretion in how to conduct that program.  Thus, the fact that WCBOE does not use a "readily available tool," (Compl., DE # 1, ¶ 19), to remove ineligible voters does not mean in and of itself that WCBOE has failed to make a reasonable effort at voter list maintenance.  However, it, along with other evidence, may be relevant to determine the reasonableness of WCBOE's efforts

10

at voter list maintenance. As such, the court will consider the allegation along with VIP-NC's other allegations to determine whether it has stated a claim under the NVRA.

Defendant-intervenors argue that Section 8's "safe harbor" provision defeats VIP-NC's claim under § 20507(a)(4). Under the "safe harbor" provision,

> A State may meet the requirement of subsection (a)(4) by establishing a program under which—
> (A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and
> (B) if it appears from information provided by the Postal Service that—
> (i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or
> (ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

52 U.S.C. § 20507(c)(1). Defendant-intervenors direct the court to a voter registration guideline SBOE has adopted which implements a program whereby the SBOE compares quarterly the statewide voter registration database against the Postal Service's National Change of Address Program and makes available to the county boards of election a report showing voters with changes of address. (Mem., DE # 28, at 7 (citing 23:20 N.C. Reg. 2019-20 (Apr. 15, 2009)).) In accordance with the guideline, the county boards of election are required to check the report and follow certain procedures for any registered voter who is likely to have moved. 23:20 N.C. Reg. 2019-20 (Apr. 15, 2009).

Given the stage of this proceeding, the court has no information about WCBOE's compliance with those procedures. Whether WCBOE's compliance is sufficient to satisfy the "safe harbor" provision is best resolved after further development of the record. See Bellitto,

11

2016 WL 6248602, at *8 (concluding that whether a letter attached to the amended complaint from the defendant local election official "establishes Defendant's full compliance with subsection (c)(1) and defeats Plaintiff's claims is a fact-based argument more properly addressed at a later stage of the proceedings"). Therefore, at this time, the court is unwilling to find that the "safe harbor" provision applies to bar VIP-NC's claim.

Considering VIP-NC's allegation that the number of registered voters in Wake County has exceeded, and continues to exceed, the number of eligible voters, which allegation is in turn supported by reliable data and WBOE's failure to use available jury excuse information, a reasonable inference can be drawn that WCBOE is not making a reasonable effort to conduct a voter list maintenance program in accordance with the NVRA. See Martinez-Rivera, 166 F. Supp. 3d at 793-94 (holding that allegations of voter rolls containing more registered voters than citizens eligible to vote—a 105% registration rate—gave rise to a strong inference of a violation of the NVRA and stated a plausible claim for relief). Accordingly, the court finds VIP-NC has stated a claim for violation of 52 U.S.C. § 20507.

### III.  CONCLUSION

For the foregoing reasons, the motions to dismiss are DENIED.

This 21 February 2017.

_____
W. Earl Britt
Senior U.S. District Judge